NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| VASILIO KOUTSOGIANNIS, | Civil Action No. 14-6579 (MAS) (LHG) |
| Plaintiff, | |
| v. | OPINION |
| MICHAEL ROGALSKI, et al., | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court upon the Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a) of Robert Conforti ("Conforti"), Thomas Dellane ("Dellane"), Hermogenes Jarin, III ("Jarin"), John Morrin ("Morrin"), Herman Pharo ("Pharo"), Michael Rogalski ("Rogalski"), and Ken Schiattarella ("Schiattarella") (collectively, "Defendants"). (ECF No. 107.) Pro se Plaintiff Vasilio Koutsogiannis ("Plaintiff") opposed (ECF No. 119), and Defendants replied (ECF No. 121). For the reasons set forth below, the Court grants the Motion in part and denies it in part. The Court grants the Motion as to Dellane, Rogalski, and Jarin, and denies the Motion as to Conforti, Morrin, Schiattarella and Pharo.

**I.    PROCEDURAL BACKGROUND**

On or about October 16, 2014, Plaintiff filed his Complaint. (Compl., ECF No. 1.) The Court permitted the Complaint to proceed but dismissed Stafford Township from the case. (Order, Dec. 12, 2014, ECF No. 3.) Plaintiff subsequently filed an amended complaint seeking to reassert his claims against Stafford Township. (Am. Compl., ECF No. 6.) Defendants then filed two motions to dismiss seeking to dismiss all claims in the Amended Complaint. (Mot. to Dismiss,

ECF Nos. 24, 25.) The Court converted the motions to dismiss into summary judgment motions, finding that Defendants had relied on evidence outside of the pleadings. (Order 1-2, Nov. 23, 2015, ECF No. 36.) The Court granted summary judgment on all claims other than Plaintiff's excessive force claim and dismissed Stafford Township, Ocean Township, Prosecutor Bridget Coughlin, the Ocean County Prosecutor's Office, and the Municipality of Toms River. (*See* Order, Feb. 29, 2016, ECF No. 47.) Defendants filed a motion for summary judgment on the remaining excessive force claim, which the Court denied without prejudice, finding the motion premature. (*See* Order, Mar. 9, 2016, ECF No. 50.) Following discovery, Defendants filed the instant Motion on the remaining excessive force claim. (ECF No. 107.) The Court administratively terminated the Motion to permit Plaintiff to submit new evidence. (Order, May 9, 2018, ECF No. 129.) Plaintiff submitted the new evidence (Letter, May 23, 2018, ECF No. 131), and Defendants responded with a brief in further support of their Motion (Br., June 5, 2018, ECF No. 133). On July 6, 2018, the Court reinstated Defendants' Motion and indicated that it would not accept any further submissions by the parties. (Order, ECF No. 136.) Plaintiff, nevertheless, filed correspondence on November 29, 2018 (ECF No. 138), and Defendants responded to Plaintiff's correspondence on November 30, 2018 and December 7, 2018 (ECF Nos. 139, 140).[1]

---

[1] The November and December 2018 correspondence does not impact the Court's decision.

## II. FACTUAL BACKGROUND[2]

This case centers around the alleged use of excessive force against Plaintiff after the police received a report of an armed robbery.[3] On March 2, 2013, the Stafford Police Department received a call from Ocean Township reporting an armed robbery that had recently occurred. (*See* K-9 Activity Report, Ex. B, at 25-26, ECF No. 107-2.) According to the report, the suspects, a male and female, brandished a handgun and fled the scene in a black Honda Elantra. (*Id.* at 25.) The license plate of that vehicle returned to 36 Ross Court in Manahawkin, New Jersey. (*Id.*) Stafford police officers responded to a police broadcast of the incident and began searching for the vehicle near the home. (*Id.*) After locating the vehicle one block from the home and finding no handgun inside, Officer Conforti's K-9 directed the officers toward 36 Ross Court. (*Id.*) Officers Conforti, Sutter, and Morrin established a perimeter around the home. (*Id.*) Officer Pharo of the Ocean County SWAT Team later arrived at the home. (*Id.*) Sophia Koutsogiannis, Plaintiff's sister, also arrived at the home.[4] (*Id.* at 25-26.)

Plaintiff testified at his deposition that he was at his parents' home at 36 Ross Court in the bathroom on the bottom floor of the house. (Pl.'s Dep., Ex. O, at 22:1-24:18, ECF No. 107-2.) At "around . . . 6, 6:30ish" in the evening, officers entered the home through the garage by triggering

---

[2] In recounting the factual background, the Court notes certain instances where the facts are disputed by the parties. In light of the summary judgment standard, however, this Court must view those disputed facts in the light most favorable to Plaintiff.

[3] Plaintiff indicated that he "does not dispute Defendants['] statement of material facts . . . background section" other than his assertion of inadequate medical care claims against the Ocean Township Defendants and excessive force claims against all Stafford Township Defendants. (Pl.'s Response 1, ECF No. 119.)

[4] The parties dispute whether Sophia Koutsogiannis gave the officers permission to enter the home. Because the validity of the search of the home is not the subject of this summary judgment motion, the Court will not discuss those facts.

3

a motion detector on the garage door. (*Id.* at 22:20-23:16.) According to the K-9 Activity Report, the garage door of the home began to open and almost immediately began to close. (K-9 Activity Report 26.) Officers Morrin and Schiattarella ran to the garage door to prevent it from closing and it began to re-open. (*Id.*) Officer Conforti proceeded to the garage with his K-9. (*Id.*)

Plaintiff testified that he heard the interior garage door being kicked open, and eight to ten officers rushed at him with their guns drawn. (Pl.'s Dep. 27:9-28:21.) Plaintiff stated that he immediately put his hands up, tried to get on the ground and was then "picked up," "slammed head first on the ground," was told his head would get blown off and that he would be killed. (*Id.* at 30:4-30:13.) Plaintiff testified that the officers jumped on his back, ripped his arms out from under him, twisted his arms and shoulders, put his hands behind his back, and placed him in handcuffs. (*Id.* at 37:2-37:15.) Plaintiff testified that he was sure that Officers Pharo, Conforti, Morrin, and Schiattarella were present. (*Id.* at 30:24-31:2.) Specifically, Plaintiff stated that Officer Morrin grabbed his middle waist area, Officer Schiattarella grabbed his upper body, and they jointly smashed him to the ground. (*Id.* at 48:17-49:4.) Plaintiff also testified that while he was in handcuffs, the officers continued to administer blows to his back, placed their knees on his back and neck, and "squash[ed]" him toward the ground so he could barely breathe. (*Id.* at 37:2-37:15.) The officers kept him on the ground for five to ten minutes while the home was searched. (*Id.* at 52:13-53:22.) The officers then dragged Plaintiff down the hallway, lifted him up, and carried him through the garage door into a patrol car. (*Id.* at 56:16-57:4.) Plaintiff testified that he sustained a cut to his hairline area that bled. (*Id.* at 62:21-63:12.) Plaintiff further testified that when he arrived at the Ocean Township Police Department, he complained to Officer Rogalski and another officer that he had a cut on his face and needed water, but they seemed to not care. (*Id.* at 71:12-73:4.)

4

Defendants argue that based on various police reports and certifications by the officers involved in the incident, Plaintiff was taken into custody without incident. (*See, e.g.*, SWAT Team Report, Ex. C at 31, ECF No. 107-2.) Defendants also argue that after the March 2, 2013 incident, officers returned to the home with a search warrant, located controlled dangerous substances, and found a handgun in the garage. (K-9 Activity Report 26.)

On February 6, 2015, Plaintiff pled guilty to a charge of second-degree robbery and the State agreed to dismiss the remaining charges in his indictment. (*See* J. of Conviction, Ex. K, ECF No. 107-2.)

### III. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56 permits a court to award a party summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if supported by evidence such that a reasonable jury could return a verdict in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251-52 (1986); *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 422-23 (3d Cir. 2006). A fact is material if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *See Anderson*, 477 U.S. at 248; *Kaucher*, 455 F.3d at 423. In determining whether a genuine dispute of material fact exists, the Court must view the facts and all reasonable inferences drawn from those facts "in the light most favorable to the [non-movant]." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party then carries the burden to "designate specific facts showing that there is a

genuine [dispute] for trial." *Id.* at 324 (internal quotation marks omitted). Moreover, the non-moving party "may not rest upon the mere allegations or denials of [the] pleading." *Id.* at 322 n.3 (quoting Fed. R. Civ. P. 56(e)). The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Moreover, a mere "scintilla of evidence . . . will be insufficient." *Anderson*, 477 U.S. at 252.

IV. <u>ANALYSIS</u>

Defendants contend that there is no evidence that excessive force was used against Plaintiff, and, in any event, they are entitled to qualified immunity.[5] Plaintiff responds that Morrin and Schiattarella used excessive force against him in violation of his constitutional rights and that Conforti and Pharo failed to intervene when the force was administered. (Pl.'s Opp'n Br. 2, ECF No. 119-1.) Plaintiff further alleges that Stafford Township failed to properly train and supervise its employees.[6] (*Id.*)

A. <u>Failure to Supervise</u>

The Court notes that it previously dismissed Stafford Township from this case and granted summary judgment in favor of Stafford Township. (*See* Order, Feb. 29, 2016, ECF No. 47.) Plaintiff failed to demonstrate that the Court's previous ruling should be altered. The Court, accordingly, declines to address this matter further.

---

[5] Defendants also maintain that Plaintiff conceded at his deposition that his excessive force claim is limited to Morrin and Schiattarella. (Mot. 8.) The Court does not agree with Defendants' contention.

[6] Plaintiff also responds that he has alleged a claim of inadequate medical care against Defendants Rogalski and Jarin for failing to respond to complaints regarding the cut to his hairline. (Pl.'s Opp'n Br. 2, 27-28.) The Court previously granted summary judgment in favor of Defendants on all claims other than Plaintiff's excessive force claim, which is the only claim relevant to the instant Motion. (*See* Order, Feb. 29, 2016.) Plaintiff had ample opportunity to challenge that ruling and failed to do so. The Court, accordingly, will not address any claims related to alleged inadequate medical care.

6

B.  Excessive Force Claim

Here, the Court addresses the excessive force claim only with respect to Morrin and Schiattarella. The allegations against Pharo and Conforti for failure to intervene will be addressed later in the Opinion.[7]

The Fourth Amendment precludes the use of unreasonably excessive force in the context of an arrest. *Graham v. Connor*, 490 U.S. 386, 394 (1989). To establish a claim of excessive force under the Fourth Amendment, a plaintiff must demonstrate that, under the totality of the circumstances, the officer's actions were not objectively reasonable. *Id.* at 397. In assessing reasonableness, the Third Circuit asks, "whether under the totality of the circumstances, 'the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'" *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Graham*, 490 U.S. at 397). In assessing objective reasonableness, courts balance the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks and citation omitted). The Supreme Court has provided three general factors to guide the Court's reasonableness inquiry: (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) whether the suspect "is actively resisting arrest or attempting to evade arrest by flight." *Id.* "Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the

---

[7] In addition, because Plaintiff failed to allege facts with respect to Dellane in opposition to Defendants' Motion, the Court grants summary judgment as to Dellane.

police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997) (*abrogation recognized by Damiani v. Duffy*, No. 17-3725, 2018 WL 5881526, at *4 (3d Cir. Nov. 9, 2018)). While some courts consider "only the facts and circumstances at the precise moment that excessive force is applied," courts within the Third Circuit take into account "all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force." *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004).

The objective reasonableness of a particular use of force is evaluated from "the perspective of the officer at the time of the incident and not with the benefit of hindsight." *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. Nevertheless, "[t]he reasonableness of the use of force is normally an issue for the jury." *Rivas*, 365 F.3d at 198.

Plaintiff and Defendants have widely varying accounts of what occurred during the incident. Plaintiff claims that while his hands were in the air and he was attempting to get to the ground, Morrin and Schiattarella lifted him, slammed him head first to the ground, jumped on his back, and violently twisted his arms and shoulders to handcuff him. After Plaintiff was handcuffed, the officers continued to administer blows to his back, while holding him down with knees to the back of his neck, and pressed him to the ground rendering him unable to breathe. The officers then dragged Plaintiff to the patrol car.[8] In contrast, Defendants contend that after a

---

[8] Plaintiff submitted a declaration from his sister Katerina Koutsogiannis in which she declared that she observed the officers violently slam Plaintiff to the ground and threaten to kill him. (*See* Katerina Decl., Ex. BB, ECF No. 107-3 at 446.) Plaintiff also submitted an affidavit from his sister Sophia Koutsogiannis in which she declared that she observed Plaintiff dragged to a police car with blood coming from his forehead. (*See* Sophia Dec., Ex. CC, ECF No. 107-3 at 448.)

reported robbery, they entered the garage, identified themselves, and Plaintiff was arrested without incident. They also note that a handgun was later located in the garage and Plaintiff ultimately pled guilty to the robbery.

It is true that officers are permitted to use some force when effectuating an arrest. The Supreme Court has explained that effectuating an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396; *see Ference v. Twp. of Hamilton*, 538 F. Supp. 2d 785, 809 (D.N.J. 2008) (holding that some physical contact, alone, is insufficient to show excessive force because "[w]ere it otherwise, police officers might have to rely on verbal instructions alone to effect an arrest for fear of section 1983 liability."). Stated differently, not every push, shove or grab constitutes excessive force. *See Graham*, 490 U.S. at 396; *see also Cruz v. City of Wilmington*, 814 F. Supp. 405, 412-13 (D. Del. 1993) (finding that, where a suspect repeatedly failed to follow the officers' directions, the alleged conduct of the officers in pulling him from the car and twisting his arm in order to handcuff him was not excessive force). Here, however, viewing the facts in the light most favorable to Plaintiff, it appears that Plaintiff had surrendered to the officers at the time the officers administered the alleged excessive force. Plaintiff testified at his deposition that his hands were raised, and he was attempting to get to the ground. Furthermore, even assuming the officers were justified in

---

Defendants argue that these affidavits should be disregarded based on the "sham affidavit" doctrine, which "refers to the trial courts' practice of disregarding an offsetting affidavit that is submitted in opposition to a motion for summary judgment when the affidavit contradicts the affiant's prior deposition testimony." *In re CitX Corp., Inc.*, 448 F.3d 672, 679 (3d Cir. 2006). Defendants argue that the sisters' testimony in state court, as well as their interviews with the police moments after they were arrested, failed to mention any use of excessive force. (ECF No. 107-4 at 7–10.) To the extent the sham affidavit doctrine applies, even disregarding the sisters' affidavits, the Court, for the reasons discussed below, finds that Plaintiff has raised sufficient disputed facts to deny summary judgment.

administering some force *before* Plaintiff was handcuffed, that does not necessarily justify the blows Plaintiff allegedly received *after* he was already on the ground handcuffed.

Turning, specifically, to the *Graham* factors, the Court must determine whether a reasonable jury could conclude that it was not objectively reasonable for Defendants to throw Plaintiff head-first to the ground, violently twist his arms and shoulder, and administer blows after he was handcuffed.

The first *Graham* factor is the severity of the crime. The undisputed facts demonstrate that the police responded to a reported armed robbery, and that Plaintiff ultimately pled guilty to a charge of second-degree robbery. Even viewing this evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that an armed robbery weighs against Plaintiff based on the severity of the crime.

The Court turns to the second *Graham* factor—whether Plaintiff posed an immediate threat to the officers. The officers received a report of an armed robbery in which a male and female were reportedly involved. While Plaintiff may have posed an immediate threat to the safety of the officers, once Plaintiff exited the bathroom with his arms in the air, effectively surrendering to the officers, the immediate threat either no longer existed or was considerably reduced. Furthermore, after Plaintiff was thrown to the ground and handcuffed, Plaintiff testified that the officers continued to administer blows to his head, while holding him down with knees to Plaintiff's neck and lower back. While a handgun was ultimately found in the garage, there is nothing to indicate that the officers observed the gun while making the arrest. Under these circumstances, a reasonable jury could conclude that Plaintiff did not pose an imminent threat to the officers or the public. Thus, this factor weighs in Plaintiff's favor.

The third *Graham* factor—whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight—also weighs in Plaintiff's favor. Plaintiff testified that he exited the bathroom with his hands in the air and attempted to comply with the officers. Taking his statements as true, as this Court must, this factor similarly weighs in Plaintiff's favor.

While some of the *Sharrar* factors weigh against Plaintiff—such as the possibility that Plaintiff was dangerous and may have been armed—that does not negate the fact that Plaintiff's hands were raised, and he had, in effect, surrendered to the officers when he was allegedly beaten.

Under the facts as alleged by Plaintiff, a reasonable jury could conclude that the officers violated his Fourth Amendment right and a reasonable jury could conclude that the officers' use of force was not "objectively reasonable" under these circumstances.[9] Morrin and Schiattarella, accordingly, have not met their burden for summary judgment on the excessive force claim.

---

[9] In support of their Motion, Defendants produced significant evidence that calls into question the credibility of Plaintiff's testimony. Specifically, they point to photographs taken shortly after Plaintiff's arrest that appear to show no signs of injuries. Defendants also point to the video interview of Plaintiff taken after his arrest, which appears to show no injuries. In addition, Defendants cite transcripts of the state court proceedings in which, according to Defendants, neither Plaintiff nor his sisters testified that excessive force was used. Defendants also reference the police reports and certifications of the officers, which all state that Plaintiff was arrested without incident. Finally, Defendants note that a handgun was found in the garage, drugs were found in the home, and Plaintiff ultimately pled guilty to the robbery. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." *Paladino v. Newsome*, 885 F.3d 203, 209-10 (3d. Cir. 2018) (citing *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004)). In addition, "[s]ummary judgment is inappropriate when a case will turn on credibility determinations." *Horowitz v. Fed. Kemper Life Assur. Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995). "Indeed, a single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment. This is true even where . . . the information is self-serving." *Paladino*, 885 F.3d at 209 (internal quotations omitted). Here, were a jury not to highly credit Plaintiff's testimony, his excessive force claim would likely fail at trial. Nevertheless, because the Court must view the facts in the light most favorable to Plaintiff and cannot weigh the evidence, Defendants failed to demonstrate that they are entitled to summary judgment.

C.  Qualified Immunity

Defendants also contend that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When properly applied, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). To overcome qualified immunity, a plaintiff must plead facts sufficient to show that: (1) the official violated a statutory or constitutional right; and (2) "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (citation omitted). A right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks and citation omitted). The burden of proving the affirmative defense of qualified immunity rests on the party seeking to invoke it. *See Thomas v. Independence Twp.*, 463 F.3d 285, 292 (3d Cir. 2006). Because, as discussed above, the use of excessive force in violation of Plaintiff's Fourth Amendment right has already been determined, Plaintiff has met the first prong of overcoming qualified immunity.

With respect to the second step of a qualified immunity analysis, this Court must "identify the right at issue and determine if that right was clearly established at the time of the officer's action." *Estep v. Mackey*, 639 F. App'x 870, 873 (3d Cir. 2016). A right is clearly established where, at the time of the challenged conduct, the contours of the right are "sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'"

*Reichle v. Howards*, 566 U.S. 658, 664 (2012) (alteration in original) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)).

While a case directly on point is not required, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001). "Such precedent must come either from the Supreme Court or a robust consensus of cases of persuasive authority in the Court of Appeals." *In Re: J & S Properties, LLC*, 872 F.3d 138, 143 (3d Cir. 2017) (quotation marks and citation omitted).

In determining whether a constitutional right has been clearly established, the Court must "define the right allegedly violated at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citation omitted). Both the Supreme Court and the Third Circuit have repeatedly instructed courts "not to define clearly established law at a high level of generality." *al–Kidd*, 563 U.S. at 742 (citations omitted). "Rather, the right at issue must be framed 'in a more particularized, and hence more relevant, sense, in light of the case's specific context, not as a broad general proposition.'" *Mackey*, 639 F. App'x at 873 (quoting *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 638 (3d Cir. 2015)). Within the context of excessive force claims specifically, both the Supreme Court and Third Circuit have emphasized the importance of defining with particularity the clearly established law. *White v. Pauly*, 137 S. Ct. 548, 552 (2017); *Santini*, 795 F.3d at 417 (observing that the qualified immunity analysis "has more particularized requirements in an excessive force case.").

Here, the Court is mindful of defining the clearly established right with the appropriate level of specificity, while taking into consideration the totality of the circumstances facing the law enforcement officers in this case. The Court defines the clearly established right as the following:

it is clearly established that Plaintiff has the right to be free from being slammed head-first to the ground, jumped on, handcuffed and then beaten, even after reports of an armed robbery, so long as the threat he poses is no longer imminent and he was not evading arrest.

While it is helpful to rule upon qualified immunity early in the proceedings, the Third Circuit has recognized that "the imperative to decide qualified immunity issues early in the litigation is in tension with the reality that factual disputes often need to be resolved before determining whether the defendant's conduct violated a clearly established constitutional right." *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002). Thus, "a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis." *Id.*

Because a material dispute of fact exists in this case regarding whether any force was used in effectuating Plaintiff's arrest, the Court finds that an ultimate decision on qualified immunity would be premature at this time. According to Defendants, Plaintiff was arrested without incident. Under Defendants' version of the circumstances, Defendants' conduct would not be clearly established as a violation of Plaintiff's Fourth Amendment rights. If, however, the factfinder concludes that Plaintiff had surrendered to the police, his hands were raised, and he was then slammed to the ground, jumped on, handcuffed, and beaten, the officers' actions could have been unreasonable. Pre-existing case law in this Circuit, and others, makes clear that law enforcement officers must limit their use of force where a suspect is immobilized and neither resisting arrest nor attempting to flee. *See Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009) ("[A]t the time of the incident in 2001, it was established that an officer may not kick or otherwise use gratuitous force against an inmate who has been subdued."); *Gulley v. Elizabeth City Police Dep't*, 340 F. App'x 108, 110 (3d Cir. 2009) (finding that it was clearly established that "beating a suspect on

the face and head, who is lying down and not resisting arrest, would constitute excessive force in violation of the Fourth Amendment.") (citations omitted); *Green v. N.J. State Police*, 246 F. App'x 158, 163 (3d Cir. 2007) (holding it was clearly established that "a reasonable officer would know, based on the *Graham* and *Sharrar* factors, that it would be excessive to grab and choke an arrestee's throat, especially before using lesser force; to hit him on the head twice with a flashlight; and to kick him when he is already restrained and on the ground."); *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 407 (6th Cir. 2009) ("Gratuitous violence inflicted upon an incapacitated detainee constitutes an excessive use of force, even when the injuries suffered are not substantial.") (citations and quotation marks omitted).

In sum, viewing the facts in the light most favorable to Plaintiff, Defendants Morrin and Schiattarella have not satisfied their burden of proving the defense of qualified immunity at this time because critical facts remain in dispute.[10] Accordingly, summary judgment is premature and denied as to these Defendants at this time.

D. <u>Failure to Intervene</u>

Plaintiff maintains that Officers Conforti and Pharo should be denied summary judgment for their failure to intervene on his behalf. A police officer can be held liable under § 1983 for failing to intervene to prevent a constitutional violation that occurs in his presence. *See Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) ("If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983.") (quoting *Byrd v. Clark*, 783 F.2d

---

[10] At the same time, the Court cannot conclude at this stage of the proceedings that the Defendants would not be able to claim immunity once the factfinder resolves the disputed facts. Therefore, Defendants Morrin and Schiattarella may renew their request for qualified immunity at trial, if and when appropriate.

1002, 1007 (11th Cir. 1986)). Liability for failure to intervene, however, only attaches where the officer had "a realistic and reasonable opportunity to intervene." *Mensinger*, 293 F.3d at 651. Thus, to establish a Fourth Amendment violation for failure to intervene, Plaintiff must demonstrate that Defendants Conforti and Pharo: (1) observed or had knowledge that a constitutional violation was taking place, yet failed to intervene; and (2) had a reasonable and realistic opportunity to intervene. *See Williams v. Guard Bryant Fields*, 535 F. App'x 205, 210 (3d Cir. 2013). "It is plaintiff's burden to adduce evidence of both requirements." *Lora-Pena v. Denney*, 760 F. Supp. 2d 458, 468 (D. Del. 2011) (citation omitted).

Plaintiff testified at his deposition that Defendants Conforti and Pharo "witnessed the whole thing going on." (Pl.'s Dep. 31:15-31:20.) In their respective certifications in support of the instant Motion, Defendants Pharo and Conforti both stated that Plaintiff was compliant with the officer's instructions and was arrested without incident—indicating that they were present during the arrest. (*See* Conforti Certification ¶¶ 16-17, ECF No. 107-9; Pharo Certification ¶ 10, ECF No. 107-10.) Accepting Plaintiff's version of the events as true, it is possible to conclude that Defendants Pharo and Conforti observed the alleged use of excessive force, meeting the first prong outlined above.

It also appears from Plaintiff's testimony, however, that the events occurred fairly quickly. Plaintiff testified that he exited the bathroom and was immediately "bum-rushed" by the police. (Pl.'s Dep. 28:15-28:16.) He further testified that he felt three knees on his back, which he was certain belonged to Defendants Schiattarella and Morrin. (*Id.* at 50:10-50:23.) While Plaintiff testified that he was pinned to the ground for between five and ten minutes, he also noted that during that time officers dispersed around the home. (*Id.* at 52:13-53:12.) It is not clear, therefore, whether Defendants Conforti and Pharo had a realistic opportunity to intervene, because the events

16

took place quickly and these officers may have been searching the home at the time the majority of the blows were administered. Nevertheless, because Defendants have not addressed this point in their various briefs in support of their Motion, Plaintiff's testimony leaves open the possibility that the incident lasted long enough for Defendants Conforti and Pharo to intervene.

Nor would Defendants Conforti or Pharo be entitled to qualified immunity. Because a Fourth Amendment violation based on the failure to intervene has already been determined, Plaintiff has met the first prong of overcoming qualified immunity. With respect to the second prong of qualified immunity—whether the right was clearly established at the time of the Defendants' alleged misconduct—the Court finds that at the time of this incident, it was clearly established that an officer must intervene when fellow officers use excessive force against a third party, so long as they had a realistic opportunity to do so. *See Garbacik v. Janson*, 111 F. App'x 91, 93-94 (3d Cir. 2004) (finding it was clearly established in 1997 that "[Section] 1983 liability could lie for failure to intervene" and explaining that "[s]everal circuit courts had concluded prior to 1997 that the direct use of excessive force is not required to impose liability under [Section] 1983."); *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985) ("[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance."); *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972) ("We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge."). For these reasons, summary judgment as to Defendants Conforti and Pharo is denied.

## V. CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion in part and denies it in part. The Court grants the Motion as to Dellane, Rogalski, and Jarin and denies the Motion as to Conforti, Morrin, Schiattarella, and Pharo. An appropriate order follows.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: February 19, 2019